UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                    CASE NO. 8:11-cr-607-T-23TGW
                                                                  8:13-cv-1412-T-23TGW
ALEXANDER CHAVERRA-SERNA
                                                   /

**O R D E R**

  Chaverra-Serna's motion to vacate under 28 U.S.C. § 2255 (Doc. 1) challenges the validity of his conviction for conspiracy to possess with the intent to distribute cocaine while aboard a vessel, for which offense he is imprisoned for 121 months. Chaverra-Serna alleges that, under *United States v. Bellaizac-Hurtado*, 700 F.3d 1245 (11th Cir. 2012), trial counsel rendered ineffective assistance by not challenging the district court's subject matter jurisdiction. The United States correctly argues (Doc. 4) that *Hurtado* is inapplicable. The linchpin to Chaverra-Serna's challenge is the definition of "international water."

  Chaverra-Serna pleaded guilty with the benefit of a plea agreement, in which he stipulates to the following facts (Doc. 50 in 8:11-cr-607-T-23TGW):

> During November of 2011 the Defendant was a knowing and willing participant in a drug trafficking conspiracy involving the maritime smuggling of a multi-hundred kilogram cocaine shipment in the Caribbean Sea, while on board a vessel subject to the jurisdiction of the United States.
>
> During the evening hours of November 20, 2011, the United States Coast Guard observed the Panamanian-registered fishing

> vessel (F/V) Alan Almirant traveling off the coast of Costa Rica in the Caribbean Sea. The F/V Alan Almirant was traveling without any navigation lights and was flying the Nicaraguan flag. The Coast Guard made radio contact with the master/captain of the F/V Alan Almirant, who acknowledged that the vessel was registered in Panama.
>
> Thereafter, the Coast Guard boarded the F/V Alan Almirant and the persons on board were . . . (E) ALEXANDER CHAVERRA SERNA. The Coast Guard boarding observed burlap sacks visible underneath a small layer of fish in the cargo hold. The boarding team reported that the burlap sacks found underneath the fish in the cargo hold were full of kilogram size packages of cocaine wrapped in layers of tape and rubber. The boarding team also discovered an additional eighteen (18) bales of cocaine in the forward bait hold. The Coast Guard seized a total of thirty-seven (37) bales of cocaine from the F/V Alan Almirant.
>
> Before the Coast Guard interdiction described above, the F/V Alan Almirant met with another boat on the high seas that was transporting the bales of cocaine. Thereafter, the persons on board the F/V Alan Almirant received the bales of cocaine and concealed them in the locations described above. The bales of cocaine were to be transported by the persons on board the F/V Alan Almirant and delivered to other persons. All of the persons on board the F/V Alan Almirant, including the Defendant, knew before leaving port that they were going to participate in a drug smuggling venture and were to be paid for their involvement in the drug venture.
>
> The Government of Panama provided consent to the exercise of jurisdiction by the United States with respect to the F/V Alan Almirant, its non-Panamanian crew and the contraband seized from the vessel. Therefore, the F/V Alan Almirant and all persons on board, including the Defendant, were subject to the jurisdiction of the United States. On December 4, 2011, the persons on board the F/V Alan Almirant, including the Defendant, were brought to the United States with the first point of entry to the United States being at a place in the Middle District of Florida.

The United States certifies (Doc. 120-1 at 2 in 11-cr-607) that Chaverra-Serna's vessel was "approximately 82 nautical miles south east of San Andres Island,

Columbia, in international waters." Chaverra-Serna contends that the "actual coordinates of the (F/V) Alan Almirant was Latitude 11°30' N longitude 89°43' W, which clearly place[s] the (F/V) in Columbian territorial waters, which waters were claimed by Nicaragua, and same waters became territorial waters of Nicaragua under The Hague Judgement of 2012." (Doc. 5 at 1-2)

Chaverra-Serna was convicted of violating the Maritime Drug Law Enforcement Act ("MDLEA"), 46 U.S.C. §70503(a), *et. seq.*, which is based on the constitutional authority granted to Congress "[t]o define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations." U.S. Const., Art. I, § 8, cl. 10. *Hurtado*, 700 F.3d at 1248-49, explains the breadth of jurisdiction under the MDLEA.

> The Supreme Court has interpreted that Clause to contain three distinct grants of power: the power to define and punish piracies, the power to define and punish felonies committed on the high seas, and the power to define and punish offenses against the law of nations. *See United States v. Smith*, 18 U.S. (5 Wheat.) 153, 158–59, 5 L. Ed. 57 (1820). The first two grants of power are not implicated here: piracy is, by definition, robbery on the high seas, *United States v. Furlong*, 18 U.S. (5 Wheat.) 184, 198, 5 L. Ed. 64 (1820), and the Felonies Clause is textually limited to conduct on the high seas, *see* U.S. Const., Art. I, § 8, cl. 10. The United States relies instead on the third grant – the Offences Clause – as the source of congressional power to proscribe the defendants' drug trafficking in the territorial waters of Panama. The question whether Congress has the power under the Offences Clause to proscribe drug trafficking in the territorial waters of another nation is an issue of first impression in our Court.

*Hurtado* rejects the argument that the "Offences Clause" authorizes the MDLEA to control drug activity that occurs within a foreign country's territorial

- 3 -

water.  "Because drug trafficking is not a violation of customary international law, we hold that Congress exceeded its power, under the Offences Clause, when it proscribed the defendants' conduct in the territorial waters of Panama."  700 F.3d at 1258.  *Hurtado* is inapplicable to Chaverra-Serna because his vessel was in international water and not a nation's territorial water.

Chaverra-Serna disputes the definition of "international water."  Chaverra-Serna argues that under "The Hague Judgement of 2012," which settled a dispute between Columbia and Nicaragua over their territorial boundaries, the location of the F/V Alan Almirant was in the territorial water of Nicaragua.  To the contrary, the district court is bound by decisions from the United States Supreme Court and the Eleventh Circuit Court of Appeals, which define "international water" as all area beyond twelve miles from land.  *See United States v. McPhee*, 336 F.3d 1269, 1273 (11th Cir. 2003).  The location of the F/V Alan Almirant is undisputed.  Under controlling law, the F/V Alan Almirant's location was in international water.  Consequently, trial counsel was not ineffective for not challenging the district court's subject matter jurisdiction.

Accordingly, the motion to vacate under 28 U.S.C. § 2255 (Doc. 1) is **DENIED**.  The clerk must enter a judgment against Chaverra-Serna and close this case.

### DENIAL OF BOTH A
### CERTIFICATE OF APPEALABILITY
### AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Chaverra-Serna is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a COA, Chaverra-Serna must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Chaverra-Serna is not entitled to appeal *in forma pauperis* because he is not entitled to a COA.

Accordingly, a certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Chaverra-Serna must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on January 16, 2015.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE